# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No.: 0:17-cv-61893-MGC

100PLUSANIMAL RESCUE, INC. DBA
100+ ABANDONED DOGS OF
EVERGLADES FLORIDA and AMY
ROMAN, an Individual,

      Plaintiffs,

v.

MRS. DARCY ODE BUTKUS A/K/A
DARCY BUTKUS AKA "INSPECTOR
BARK"

      Defendant.

_____/

**Oral Argument Requested**
**Fla. Stat. §768.295(4)**

## DEFENDANT'S SPECIAL MOTION TO DISMISS PURSUANT TO §768.295, FLORIDA STATUTES (ANTI-SLAPP STATUTE)

COMES NOW, Defendant, DARCY ODE BUTKUS ("Mrs. Butkus"),[1] by and through undersigned counsel, and pursuant to Florida Statute §768.295(4) ("Anti-SLAPP") files this Special Motion to Dismiss Plaintiffs', 100PLUSANIMAL RESCUE, INC. d/b/a 100+ ABANDONED DOGS OF EVERGLADES FLORIDA ("Plaintiff Rescue") and AMY ROMAN ("Ms. Roman") (collectively, "Plaintiffs") First Amended Complaint [DE 6][2] and states:

## INTRODUCTION

When Plaintiffs filed the Complaint [DE 1] and initiated this action they fired a warning shot across the bow of the First Amendment. Plaintiffs' message is unmistakable: if you exercise your right to free speech or freedom of the press and have unfavorable commentary regarding Plaintiffs, or disagree with their opinions, move on and find a different subject – or you could

---

[1] Mrs. Butkus denies and rejects the propriety the styled party description and to her having been named in her individual capacity. Plaintiff's allegations appear to be directed and/or related to Inspector Bark, LLC, a limited liability company organized in the State of Georgia.

[2] Plaintiffs' First Amended Complaint (the, "Complaint") [DE 6] is the third (3rd) operative complaint in this action. *See*, [DE 1, 5]. On the surface it appears that the main variance(s) between the Complaint and its predecessor [DE 5] is the inclusion of Plaintiffs' Exhibit "A" [DE 6-1]. However, to the extent the inclusion of Exhibit "A" or any other modification to the pleading amounts to more than mere corrections of scrivener's error, the instant Complaint [DE 6] was filed without leave of Court in derogation of Federal Rule 15(2), and thus, procedurally improper.

well end up on the receiving end of negative comments directed towards yourself through a lawsuit replete with vitriolic allegations.

This litigation is an archetypal "strategic lawsuit against public participation," or "SLAPP." Lacking any substantive merit under Rule 12, Plaintiffs seek to retaliate against Mrs. Butkus for engaging in the very speech and conduct the First Amendment and Florida Constitution protect. In such cases, even when ultimately unsuccessful on the merits, plaintiffs like Plaintiff Rescue and Ms. Roman nonetheless prevail, simply by having discouraged speech they disagree with and forcing defendants to incur significant litigation expenses.

For decades, Courts and academics have observed the increasing prevalence of cases like the one at bar. But the Florida legislature has made clear that the courts of this state should not tolerate litigation that seek to chill rights of free speech. By enacting Florida Statute §768.295 (as amended, 2015), a classic "Anti-SLAPP statute," Florida imposes a heightened standard of proof for claims arising from a defendant's exercise of an intentionally broad range protected speech and other petition-related activity. Florida law also mandates that SLAPP defendants receive attorney's fees and costs incurred in defending against meritless litigation.

Under the Anti-SLAPP statute, Plaintiffs' defamation claims because they cannot prove a probability of success on the merits. Indeed, for the reasons set forth below, Plaintiff fails even to state a claim as a matter of law under Federal Rule 12. Consequently, Florida law requires that the Court dismiss the Complaint and award the Defendant her attorney's fees and costs.

## ARGUMENT SUMMARY

The entirety of this action originates from the Florida Department of Agriculture and Consumer Services' ("DCS") December 2, 2016 Investigative Report, Case No. 1506-25031 and the correlating Administrative Complaint and Settlement Agreement (the "Investigative Report"). *See*, **Exhibit 1**. Over the course of the Investigative Report's fourteen (14) pages and twenty-six (26) separate exhibits, the DCS details its approximately eighteen (18) month investigation into Plaintiff Rescue. *Id*. Following its thorough investigation, the DCS found that Plaintiff Rescue had committed at least ten (10) violations of Chapter §496.415. *See* **Exhibit 1** at 8-13. Relevant to the issues *sub judice*, the Investigative Report found:

- Multiple failures to comply with the registration requirements of charitable organizations and sponsors under §496.405, including disclosing the addresses of Plaintiff Rescue and each of its officers and directors. **Exhibit 1** at 8-9.

- Failure to comply with § 496.4055(2) and its requirement that a charitable organization must adopt a Conflict of Interest Policy, certify the Policy annually and submit the annual certification with the organization's annual registration statement. **Exhibit 1** at 10.

- Failure to comply with §496.411 requirement of displaying the statutory disclosure statement on every solicitation, confirmation, receipt, or reminder of a contribution. **Exhibit 1** at 10.

- Failure to maintain records as mandated by §496.418. **Exhibit 1** at 10-11.

- 960 electronic debit transactions on <u>Plaintiff Rescue's debit card account</u> in the amount of $98,758.04 for personal expenses of Plaintiff Amy Roman, not for the organization's stated purpose of rescuing animals. **Exhibit 1** at 11.

- Violation of §496.415(7) by making a misleading and deceptive solicitation request; Plaintiff Rescue posted a picture of a dog, Taco, a month after the dog had passed away and requested donations for the dog. **Exhibit 1** at 11.

- Violation of §496.415(16) and §617.0833 by improperly using solicited contributions for Amy Roman's purchase of a BMW Model X5 and taking out an auto loan of $30,000. **Exhibit 1** at 11.

Put simply, the DCS found that Plaintiff Rescue and Plaintiff Roman had misappropriated charitable assets in contravention of applicable state law and the animal rescue's mission, and engaged in misconduct regarding its solicitation and use of donations. *See generally*, **Exhibit 1**. As a result of these violations, the DCS filed an Administrative Complaint and indicated that if Plaintiff Rescue wanted to resolve the matter, it must "<u>pay an administrative fine</u> of Ten Thousand Dollars ($10,000.00) and immediately consent to the cancelation and relinquishment of [its Solicitation of Contributions registration]" as well as "cease all charitable solicitation activities under Chapter 496, Florida Statutes." **Exhibit 1** at 15-19.  (emphasis added).

Following the publication of the Investigative Report, Inspector Bark obtained a copy as a matter of public record, and presented the same along with coinciding commentary and opinions on its web property, Dog Rescues: The Good Bad and Ugly ("GBU") for further public discourse. *See*, GBU Posts attached hereto as **Exhibit 2**. As discussed further below, cursory review of these posts show that all of the alleged statements are pure opinion and/or rhetorical questions/hyperbole that otherwise non-actionable and protected free speech in connection with public issues, both on their face and in the total context of the statement(s). *See generally*, *id*. Indeed, each post accompanies pages from the Investigative Report. *See e.g.,* **Exhibit 2.**

On February 1, 2017, the Inspector Bark internet radio talk-show program referenced the Investigative Report as a launching point for a two (2) hour discussion on charitable organization compliance with Florida law and the accounting requirements of a 501(c)(3). The show notably featured the Senior Financial Investigator of the Regulatory Investigation Section of the Office of Agricultural Law Enforcement, a certified fraud examiner, certified public manager, certified supervisory manager, and participant of the DCS' investigation of Plaintiff Rescue. *See*, **Exhibit 3** at 03:25 (introducing the guest). In addition to the DCS investigator, the February 1, 2017 program featured a tax accountant to discuss and answer questions regarding proper accounting practices for non-profit and 501(c)(3) organizations. *Id* at 04:20. Like the Facebook posts in **Exhibit 2**, the February 1, 2017 talk-show constitutes personal opinions; more importantly, it features statements that are protected under the Florida and U.S. Constitution and made before a governmental entity (the DCS investigator). Moreover, the statements are undoubtedly made in connection with issues under consideration by/of the DCS. *See generally, id*.

The reality of this case is that Plaintiffs have targeted Mrs. Butkus primarily because she exercised her constitutional right of free speech in connection with the public record Investigative Report and the underlying public issues. As demonstrated below, this action is of the exact kind and nature that the Florida Legislature has prohibited by its enactment of Florida's Anti-SLAPP statute, §768.295, and therefore must be expeditiously dismissed.

## MEMORANDUM OF LAW

### I.    Florida's Anti-SLAPP Statute

Florida's Anti-SLAPP statute has existed for more than decade. *See*, §768.295, Fla.Stat. (originally effective June 2, 2000). In its prior form, Florida's Anti-SLAPP provision pertained solely to actions brought by government entities in connection with specific activities protected by the First Amendment and §5, Art. I of the State Constitution. *Id*. However, following Governor Rick Scott's execution of the Anti-SLAPP amendment on May 21, 2015, Florida's Anti-SLAPP law was expanded considerably so as to better reflect Florida's fundamental policy to protect and preserve the exercising of free speech rights. *See*, §768.295 (2015).

The Anti-SLAPP statute now applies to suits brought by persons as well as government entities. *Id*. The amendment also broadened the scope of protected speech to include a "in connection with public issues." *id*.  More specifically, and in relevant part, the legislative intent and public policy behind Florida's Anti-SLAPP provision now provides that:

> (1) It is the intent of the Legislature **to protect the right in Florida to exercise the rights of free speech in connection with public issues**, and the rights to peacefully assemble, instruct representatives, and petition for grievances before the various governmental entities of this state as protected by the First Amendment to the United States Constitution and §5, Art. I of the State Constitution. It is the **public policy of this state that a person or governmental entity not engage in SLAPP suits because such actions are inconsistent with the right of persons to exercise such constitutional rights of free speech in connection with public issues**. Therefore, the Legislature finds and declares that prohibiting such lawsuits as herein described will preserve this fundamental state policy, preserve the constitutional rights of persons in Florida, and assure the continuation of representative government in this state. It is the intent of the Legislature that such lawsuits be expeditiously disposed of by the courts.

Fla.Stat., §768.295(1)(emphasis added). The operative term "in connection with public issues" features a non-exclusive description of types of oral and written speech that are now protected under the law. Pursuant to §768.295(2)(a), "free speech in connection with public issues" means:

> any written or oral statement that is protected under applicable law and is made before a governmental entity **in connection with an issue under consideration or review by a governmental entity**, or is made in or in connection with a play, movie, television program, **radio broadcast**, audiovisual work, book, magazine article, musical work, **news report, or other similar work**.

Fla. Stat. §768.295(2)(a) (emphasis added).

As previously stated by this Court in *Tobinick v. Novella*, 108 F.Supp.3d 1299, 1305 (S.D. Fla. June 4, 2015), *affirmed* 848 F.3d 934 (11th Cir. 2017), and reiterated more recently in *Davis v. McKenzie*, 2017 U.S. Dist. LEXIS 183519 (S.D. Fla. Nov. 3, 2017), the rights conveyed to defendants under state Anti-SLAPP statutes are substantive and therefore applicable in federal court. Under Florida's Anti-SLAPP statute, it is the clear goal of the Legislature to prohibit SLAPP suits to preserve fundamental state policy. Fla. Stat. §768.295(1).  In furtherance of that goal, §768.295 grants defendants the right to: (1) an expeditious resolution of a claim that is in violation of the section; (2) move the court for an order dismissing the action or granting final judgment; and (3) a hearing on the motion at the earliest possible time after briefing on the motion is concluded. Fla. Stat. §768.295(4).  While the Eleventh Circuit has determined that Anti-SLAPP laws are substantive, *supra*, this District as also opined that to the extent the laws

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

present procedural remedies, such rights are merely supplemental – and not a substitute for - the Federal Rules of Civil Procedure. *See*, *McKenzie*, 2017 U.S. Dist. LEXIS 183519 at \*7-8.

While this area of the law is developing, this District has evaluated similar state anti-SLAPP statutes in a conflict of laws context. *See Novella*, 108 F.Supp.3d 1299; *McKenzie*, 2017 U.S. Dist. LEXIS 183519 (opining on California's anti-SLAPP law). Indeed, Florida's Anti-SLAPP statute is similar to California's statute, and has been used as a model and influence for enacting and interpreting other state anti-SLAPP laws including Florida. *See Florida's Expanded Anti-SLAPP Law: More Protection for Targeted Speakers*. Morely, J. Samuel. The Florida Bar Journal. Vol. 90, No. 9 at 16 (Nov. 2016) (citing, *Serafine v. Blunt*, 2015 Tex. App. LEXIS 4517 at \*85-86). Both Florida's and California's statutes provide for expedited procedures to dispose of claims directed at the exercise of free speech rights that are in connection with "an issue of public interest" (California" or "public issue" (Florida).[3] Accordingly, in the absence of Florida law to the contrary, California jurisprudence is instructive.

### A. Applicable Legal Standards Governing Florida Anti-SLAPP Motions

Consistent with principles on statutory interpretation, the plain meaning of §768.295 provides a movant is entitled to an disposal of a SLAPP suit where it is demonstrated that the lawsuit is (1) without merit, and (2) brought primarily because of the defendant's exercise free speech "in connection with public issues." Fla.Stat. §768.295(2)(a) and (3). In evaluating similar statutory provisions, federal courts apply a general two-step framework when determining anti-SLAPP motions. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1110 (9th Cir. 2003).

"First, courts inquire if defendant's free speech or petitioning activity underlying plaintiff's cause of action is within the scope of activities protected by the anti-SLAPP statute in question, including whether it "arises from," or in Florida's version, is "primarily because" of the defendant's exercise of First Amendment activities." *Florida's Expanded Anti-SLAPP Law: More Protection for Targeted Speakers*. Morely, J. Samuel. The Florida Bar Journal. Vol. 90, No. 9 at 16 (Nov. 2016); *see also*, *Navellier v. Sletten*, 29 Ca. 4th 82, 88, 124 Cal. Rptr. 2d 530 (2002) (the court determines whether the movant has "made a threshold showing that the challenged cause of action is one arising from a protected activity."); *Medifast, Inc. et al. v. Minkow, et al.*, Case No.: 3:10-cv-00382, [DE 130 at 4] (S.D. Cal. March 29, 2011) (same).

---

[3] *Compare*, Fla.Stat. §768.295 *with* Cal.Code Civ. Proc. §425.16(b)(1); *see also*, Cal.Code Civ. Proc. §425.16(e) (defining free speech in connection with a public interest similar to Florida's Anti-SLAPP law).

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

Once this preliminary threshold is met, the burden shifts to the plaintiff to establish that the claim has merit despite protected speech activity. *See e.g.*, *Paladino*, 89 Ca. App. 4th 294, 305 (2001).

As demonstrated below, this action has been filed primarily because of Mrs. Butkus' exercise of her free speech rights in connection with public issues. Indeed, all the alleged defamatory statements are undoubtedly within the protected forms of speech delineated by Florida's Anti-SLAPP law. Plaintiffs simply cannot overcome their burden of proof to avoid dismissal as a SLAPP suit and their claims are deficient, and fail, as a matter of law, *infra*.

### i.       Step 1 – The Defendant's Threshold Showing

"A defendant meets this burden by demonstrating that the act underlying the plaintiffs' cause fits one of the categories spelled out in [the section.]" *Id* (quoting, *Braun v. Chronicle Publ'g Co.*, 61 Cal. Rptr. 2d 58, 61 (Cal. Ct. App. 1997)). Importantly, in making this demonstration, the defendant need not prove that it was a plaintiff's *intent* to chill the exercise of protected rights.[4] *See e.g., Lee-Owens v. Goodman*, 2013 WL 3892808 at *2 (Cal. 4th DCA 2013) (interpreting *Equlion Enterprises v. Consumer Cause, Inc.*, 29 Cal.4th 53, (Cal. 2002)). The only consideration is whether the movant's speech would be chilled as a result of the lawsuit. *Id*.  In the context of Florida's Anti-SLAPP statute, the "definition implicates 'public issue' speech if either of the input phrases is true. There is no requirement that defendant specifically show pending public issue relevance in order to claim protection under the [Anti-SLAPP] law. So long as the statement has the required connection, even arguably private speech can come within the ambit of the defense." *Florida's Expanded Anti-SLAPP Law: More Protection for Targeted Speakers* (Nov. 2016). Relevant in this case, "the 'made before a governmental entity in connection with an issue under consider' clause makes a 'public issue' showing unnecessary because the public nature of the expression is inherent to the fact that it is communicated and considered before a governmental forum in connection with an issue under review. This provides the court with a bright-line test as to what constitutes a 'public issue' per se without the necessity of a 'public issue' showing." *Id*.   As discussed further below, the Complaint [DE 6] is precisely the type of filing prohibited by Fla. Stat. §768.295.

### ii.      Step 2 – Burden Shifts to the Plaintiff to Prove Their Case Has Merit

Upon Mrs. Butkus' meeting her threshold showing, the heavier burden then shifts to Plaintiffs to prove their claims are not "without merit."  Under Florida law, the substance of the

- 7 -

plaintiff's claim is examined. *Florida's Expanded Anti-SLAPP Law*. Morley, J. Samuel. <u>The Florida Bar Journal</u>. Vol. 90, No.9. Anti-SLAPP courts have consistently required plaintiffs to show the probability of success of their claim. *Id*; *see e.g.*, *Lozovyy v. Kurtz*, 813 F.3d 576, 583-584 (5th Cir. 2015). A plaintiff has a probability of prevailing if the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Id* (quoting, *Wilson v. Partker, Covert & Chidester*, 50 P.3d 733, 739 (Cal. 2002)) (internal quote omitted).  This burden is akin to the substantive showing under Federal Rule 12. In the context of SLAPP suits, "pretrial dispositions are 'especially appropriate' because of the chilling effect these cases have on freedom of speech." *Stewart v. Sun-Sentinel Co.*, 695 So.2d 360, 363 (Fla. 4th DCA 1997).

Moreover, the Court can – and should – take judicial notice of the Investigative Report, the underlying Facebook posts and February 1, 2017 Inspector Bark internet radio show, and the news reports discussing said Report without converting the motion to one for summary judgment under Rule 56. *Lozman v. City of Riveria Beach,* 713 F.3d 1066, 1075 n.9 (11th Cir. 2013) (citing, *Long v. Slaton*, F.3d 576, 578 n.3 (11th Cir. 2007) (noting the court is not always limited to the four corners of the complaint at the Rule 12(b)(6) stage and <u>taking judicial notice of undisputed facts contained in a report from a state agency</u>))" *McKenzie*, 2017 U.S. Dist. LEXIS 183519, *11 (S.D. Fla. Nov. 3, 2017). Specific to the case *sub judice*, where judicially noticed information or documents attached to/incorporated by reference in the complaint contradict the factual allegations, the exhibits/judicially noticed materials control. *Griffin Industries, Inc. v. Irvin*, 496 F.3d 1189, 1205-6 (11th Cir. Aug. 21, 2007). And notably, "[i]f the appended document, to be treated as part of the complaint for all purposes under Rule 10(c), Fed.R.Civ.P., reveals facts which foreclose recovery as a matter of law, dismissal is appropriate." *Id*. at 1206.

Here, Plaintiffs have not met their burden of establishing that the allegations in the Complaint [DE 6] have merit, or can otherwise survive a Federal Rule 12(b)(6) motion as demonstrated below. Consequently, the Complaint [DE 6] must be dismissed with prejudice pursuant to Fla. Stat. §768.295 and otherwise under Federal Rule 12(b)(6).

## II.    Application of Step 1: The Investigative Report, Misappropriation of Charitable Donations & Violations of Law By a Not-For-Profit Organization are Public Issues

The instant Complaint [DE 6] falls squarely within the prohibitions of Fla. Stat. §768.295 in that the alleged defamatory statements are unequivocally protected free speech in connection with public issues. As alleged, there are two (2) categories of alleged speech: (1) written

- 8 -

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

commentary on the GBU Facebook page and (2) oral statements made during the February 1, 2017 Inspector Bark internet radio program (the "Radio Show"). *See generally*, Complaint [DE 6]. Regardless of which category a "statement" belongs to, or which defamation theory Plaintiffs may contend it supports, all of the statements referenced in the Complaint are directly connected to the Investigative Report and the issues framed therein, which were otherwise made on a public forum in connection with an issue of public interests. *Id*.; *see also*, **Exhibits 1-3**.

For example, in Paragraph 10 Plaintiffs allege that Mrs. Butkus made a false complaint to the DCS. [DE 6 at ¶10]. Assuming, *in arguendo*, that Mrs. Butkus filed a complaint with DCS[5] that speech is expressly included in Florida's Anti-SLAPP definition of "in connection with public issues." Fla. Stat. §768.295(2)(a). Specifically, such statements would be protected as being made before a governmental entity (the DCS) in connection with an issue under consideration or review by a government entity (the DCS). *Id*.

Plaintiffs also allege that Ms. Butkus posted Ms. Roman's "personal bank account and/or credit card information" on a Facebook page.[6] A cursory review of these documents reveal: (1) the allegations are irreparably contradicted by such documents and, perhaps more importantly; (2) the purported records were taken verbatim from the Investigative Report, which is public record and contains no personal identifying information or sensitive financial information. *See* **Exhibit 2** at[7]. In any event, these statements were all made in connection with a public issue; namely, an administrative complaint, extensive investigation by the DCS against Plaintiff Rescue, and related findings. It cannot be reasonably disputed that this these fall squarely within Florida's Anti-SLAPP statute's definition of "public issue." *See* §768.295(2)(a). Simply put, while Plaintiffs recount several instances where Mrs. Butkus posted on social media, every allegation relates to solely to Mrs. Butkus' opinions and/or commentary on the DCS investigation within a public forum.[8] *See* [DE 6 at ¶¶19-53]. As a result, none of the postings are actionable as a matter of law. *See Tobinick v. Novella*, 108 F.Supp.3d 1299, 1308 (S.D. Fla. June 4, 2015) *affirm'd* 848 F.3d 935 (11th Cir. 2017).[9]

---

[5] Mrs. Butkus denies making the alleged complaint to the DCS.

[6] The Complaint fails to allege whether the alleged post was made on a personal page, the GBU or another web property owned and operated by Inspector Bark. In that regard, the allegation is deficient on its face.

[7] *See,* Exhibit 2 at 4-26; 36, 41, 55-63; 103-104; 110-114; 122; 145; 150-228; 230-231

[8] The Complaint alleges that defamatory statements were posted on the GBU Facebook community page, which is not alleged as a private forum or otherwise inaccessible to members of the public. That said, it is a public website.

[9] In *Tobinick v. Novella*, the Southern District applied California's anti-SLAPP statute after a conflict-of-laws analysis, finding allegedly false and defamatory statements qualified as a protected activity "as they were made on a

As a result, the same prohibitions against this SLAPP suit apply and bar any and all alleged claims for the protected speech occurring on the Radio Show. *See*, [DE 6 at ¶¶40-47]. These too fall within the operative term "free speech in connection with a public issue" as any such statements were made in a public forum (i.e. radio broadcast) about a governmental entity (the DCS) in connection with issues under consideration by said governmental entity, or "other similar work." Fla.Stat. §768.295(2)(a); *see*, **Exhibit 3**. Notably, Plaintiffs acknowledge that the Radio Show featured the Senior Financial Investigator of the Regulatory Investigation Section of the Office of Agricultural Law Enforcement who participated in the DCS' investigation of Plaintiff Rescue. [DE 6 at ¶43]; **Exhibit 3** at 03:25 (introducing the guest). While Plaintiffs attempt to try and create some sort of impropriety where none actually exists [DE 6 at ¶43], the incontrovertibly fact remains that, at an absolute minimum the alleged "implication" was made before a governmental entity in connection with an issue under review by a governmental entity (both the Investigative Report and the DCS governance of charitable organizations in Florida). Consequently, it is beyond cavil that said statement was made "in connection with a public issue" under §768.295(2)(a). To be sure, each and every statement(s) made during the Radio Show is inherently made in connection with a public issue by sheer virtue of the fact that they were made during a public internet-radio broadcast.

It must also be noted that Mrs. Butkus is by no means the only person commenting on the Investigative Report. Indeed, multiple news media outlets covered the Investigative Report given the public interest in its subject matter. *See* Jan. 17, 2017, *Channel 7 News, Miami (WSVN)*, "Questions Raised Regarding Use of Funds for Abandoned Dog Organization" http://wsvn.com/news/investigations/questions-raised-regarding-use-of-funds-for-abandoned-dog-organization/; Jan. 17, 2017, *Channel 6 News, Miami*, "State Claims Dog Rescue Charity Misspent Funds" https://www.nbcmiami.com/news/local/State-Claims-Dog-Rescue-Charity-Misspent-Funds-410998505.html; Jan. 18, 2017, *Local 10 News*, "Animal Rescue Founder Accused of Using Donations for Vacations, Shopping Sprees" https://www.local10.com/news/local-10-investigates/animal-rescue-founder-accused-of-using-

---

public forum and in connection with an issue of public interests. 108 F.Supp.3d at 1308. There, the court found that the posts "clearly concern an area of public interest: the efficacy of treatments for, *inter alia*, stroke and Alzheimer's disease." *Id*. Moreover, this District further opined that the "public issue" status was met because "[w]eb sites accessible to the public…are 'public forums' for purposes of the anti-SLAPP statute. *Id*. Consistent with this District's application of similar anti-SLAPP provisions in *Tobinick*, the alleged statements in the Complaint [DE 6] were also made in connection with a public issue. *Id*.

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

donations-for-vacations-shopping-sprees. WSVN also posted this story on its Facebook page, which as of December 5, 2017, has no fewer than 302,000 views.[10] In light of the number of news outlets covering the Investigative Report, and the voluminous number of views of the WSVN Facebook story and video segment alone, there is no dispute that the subject of the Investigative Report and the proper operations of a charitable organization/animal rescue, solicitation practices, and (mis)appropriation of charitable donations, and the improper use of not-for-profit assets for personal use, are public issues as contemplated by the Anti-SLAPP law.

Given the clear protected status of Mrs. Butkus freedom to her opinion in a public forum, it can only be inferred that Plaintiffs are merely using litigation as a personal attack to prevent Mrs. Butkus from exercising her First Amendment rights on a public issue.

### III.   Application of Step 2: Plaintiffs Cannot Satisfy Their Burden of Proving Their Claims Have Merit;  Plaintiffs Have Not Stated a Cause of Action

Plaintiff asserts five (5) causes of action: Count I (Defamation: Plaintiff Rescue); Count II (Defamation by Implication: Plaintiff Rescue); Count III (Defamation: Plaintiff Roman); Count IV (Defamation by Implication; Plaintiff Roman); and, Count V (Negligence).

In Florida, defamation is composed of the following *prima facie* elements: (1) publication to a third party; (2) of a false statement about the plaintiff; (3) actor must act with knowledge or reckless disregard as to the falsity on the matter concern a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) the statement must be defamatory. *Klayman v. Judicial Watch, Inc.*, 22 F.Supp.3d 1240, 1249 (S.D. Fla. May 23, 2014) (emphasis added). A claim for defamation by implication differs in that it requires a sufficient factual showing that the defendant: (1) juxtaposed a series of facts so as to imply a defamatory connection between them, or (2) creates a defamatory implication by omitting facts. *Turner v. Wells*, 198 F.Supp.3d 1355, 1365-66 (S.D. Fla. 2016). While the theories differ, it remains equally true for both types of claims that in order to satisfy their pleading requirements under Federal Rule 8, Plaintiffs' "must allege certain facts such as the identity of the speaker, a description of the statement, and provide a time frame within which the publication occurred.'" *Williams v. Schrader*, 2012 U.S. Dist. LEXIS 42439 (S.D.Fla. 2012)(Cooke).

### A.  The Complaint Fails to Allege Sufficient Facts In Support of the Claims

As a preliminary matter, it must be noted that none of the four defamation claims or the duplicitous "negligent defamation" claim in Count V indicate which statement(s) they are

---

[10] *See,* https://www.facebook.com/7NewsMiami/videos/10154339737627613/?fref=mentions

purported based upon. [DE 6 at ¶¶ 54-79]. Instead, Plaintiffs incorporate every conclusory, factual, and mixed conclusion/factual allegation (and prior count, *infra*) into each subsequent cause of action rendering it impossible, at a minimum, to determine which alleged statements apply to which Plaintiff and which statements are defamatory and which are asserted under the defamation by implication theory. Consistent with this District's prior rulings, the Complaint [DE 1] does not sufficiently alleged facts in support of any particular claim and should be dismissed as being without merit under §768.295(3). *Schrader*, 2012 U.S. Dist. LEXIS at *3.

To be certain, Plaintiffs' general allegations appear to involve a number of written statements posted on Facebook. [DE 6]. However, Plaintiffs fail to attach the alleged statement or the documents Mrs. Butkus purportedly transcribed over or juxtaposed. Plaintiffs also fail to include applicable dates of other alleged acts of defamation. *See e.g.*, [DE 6 at ¶31-39].  Under Florida law, Plaintiffs have failed to allege sufficient facts; because each of the five causes of action incorporate facially deficient assertions, the Complaint [DE 6] must be dismissed. *Five for Entm't S.A. v. Rodriguez*, 877 F.Supp. 2d 1321, 1328-29 (S.D. Fla. 2012)

### B. Alleged Discussions with the DCS Investigator And/Or with the Senior Investigator During the February 1, 2017 Inspector Bark Radio are Privileged Communications and Not Actionable as a Matter of Law

Under Florida law, a statement that is made by one who has a duty or interest in the subject matter to one who as a corresponding duty or interest is qualifiedly privileged. *See e.g., Weight-Rite Golf Corp. v. U.S. Golf Ass'n*, 766 F.Supp. 1104, 1111-1112 (M.D. Fla. 1991), *affirmed without opinion*, 953 F.2d 651 (11th Cir.1992). In this regard, to the extent the Complaint [DE 6] alleges that Mrs. Butkus defamed Plaintiffs by interacting or participating in the DCS violation, such allegations (as well as all allegations regarding discussions with the DCS investigator during the Radio Show) are subject to qualified privileged immunity and are not actionable. *Demby v. English*, 667 So.2d 350, 354-55 (Fla. 1st DCA 1995) (citing, *Wilkinson v. Florida Adult Care Ass'n, Inc.*, 450 So.2d 1168, 1172 (Fla. 2d DCA 1984) (explaining that "public officials" are who 'affect government conduct, exercise independent authority, supervise lower level employees, and appear influential to the general public").

### C. As a Matter of Law the Complained Words are Non-Actionable Expressions of Pure Opinion And/or Rhetorical Hyperbole

It is for the Court to decide as a matter of law whether the complained of words are actionable expressions of fact. *Colodny v. Iverson, Yoakum, Papiano & Hatch*, 936 F. Supp. 917, 923 (M.D.Fla. 1996) ("[W]hether the alleged defamatory word is a[ ] non-actionable expression

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

of pure opinion or an actionable expression of pure fact... is a question of law for the Court.") (citing Florida cases). "In determining whether an allegedly defamatory statement is an expression of fact or an expression of pure opinion and/or rhetorical hyperbole, context is paramount." *Fortson*, 434 F. Supp. 2d at 1379. The publication and the language used should be interpreted as the "common mind" would understand it. *O'Neal v. Tribune Co.*, 176 So. 2d 535. The "common mind rule simply means that the words should be given a reasonable construction in view of the thought intended to be conveyed and that which would be a reasonable construction of the language by those who heard [the] same." *Wolfson*, 273 So.2d at 778.

A statement is pure opinion "if the speaker states the facts on which he bases his opinion." *Turner v. Wells*, 198 F.Supp.3d 1355, 1365 (S.D. Fla. 2016) (citing *From v. Tallahassee Democrat, Inc.*, 400 So. 2d 52, 57 (Fla. 1st DCA 1981) (holding that pure opinion occurs "when the defendant makes a comment or states an opinion based on facts which are set forth in the article or which are otherwise known or available to the reader or listener as a member of the public")).  In this regard, each of the identifiable statements posted to Facebook as well as those uttered during the Radio Show are not only based upon facts which are set forth in the Investigative Report or otherwise known or available to the reader or listener as a member of a public, but the Facebook posts all include pages from the Investigative Report, upon which the comments are premised. *See generally*, **Exhibit 2**.

"An important factor in the process of analyzing a comment is determining whether the speaker accurately presented the underlying facts of the situation before making the allegedly defamatory remarks. Where the speaker or writer presents the facts at the same time he or she offers independent commentary, a finding of pure opinion will usually result." *Turner*, 198 F.Supp.3d at 1366-67 (internal citations omitted). Accordingly, the Complaint [DE 6] when reviewed in conjunction with the documents referenced therein, demonstrates that the alleged statements are, as a matter of law, pure opinion and/or rhetorical hyperbole and non-actionable for claims of defamation or defamation by implication.

To be certain, to the extent Plaintiffs' argues that Mrs. Butkus made false or impliedly false statements, either directly or through juxtaposition regarding the commission of a violation of law regarding her management of charitable funds, such arguments are of no avail. Pursuant to the findings in the Investigative Report, the fact that the DCS found Plaintiff Rescue and/or Plaintiff Roman in direct violation of sections of Chapter 496, Florida Statutes were either

known or readily available to the reader/listener as a member of the public and remain expressions of pure opinion under Florida law. *See*, *Hay v. Independent Newspapers, Inc.*, 450 So.2d 293 (Fla. 2d DCA 1984).[11] And in relation to Plaintiffs' defamation by implication claims, inasmuch as these statements/comments are, as a matter of law, pure opinion, the "question of whether Mrs. Butkus created a defamatory implication by omitted facts…is irrelevant." *Turner*, 198 F.Supp.3d at 1366.  Taking the analysis one step further, Courts also must evaluate all of the circumstances surrounding the publication, including the medium by which it was disseminated and the audience to which it was published. *Id*. at 295 (citation omitted). To this end, the Court must consider the disclaimers set forth in the GBU Facebook Page. *See*, **Exhibit 2** at 1. In doing so, the context of the statements cannot be construed as another other than pure opinion as a matter of law. *Turner*, 198 F.Supp.3d at 1366-67 (quoting, *Zamrano*, 484 So.2d at 606).  Thus, the Complaint [DE 6] lacks merit and must be dismissed.

### D. The Allegations Are Contradicted by the Judicially Noticed And Documents Incorporated Into The Complaint by Reference; Plaintiffs Claims Lack the Requisite "Falsity" And Are Otherwise True And Without Merit

A review of judicially noticed documents and those incorporated by reference are dispositive to Plaintiffs' claims in that they directly contradict all suggestions that Mrs. Butkus made false or impliedly false statements or juxtapositions/omissions. For example, Plaintiff alleges that Mrs. Butkus posted Ms. Roman's personal bank/credit information and "falsely implies and/or states" that these accounts belong to Plaintiff Rescue. [DE 6 at ¶29]. Though it is unclear as to which post Plaintiffs are referring to, each of Mrs. Butkus posts regarding financial accounts are exclusively limited to the records obtained and relied upon by the DCS when issuing its findings in the Investigative Report. *see generally,* **Exhibit 2**. Said differently, Mrs. Butkus does not make any false implications or statements, and is otherwise commenting on the Plaintiff Rescue account transactions referenced in the Investigative Report. *Id*.

Assuming, *in arguendo*, that there are some discrepancies regarding which entity/person Mrs. Butkus' commentary is referring to on those documents, they would still not arise to the requisite level of "falsity" necessary for a defamation claim. "Falsity only exists if the publication is ***substantially*** and ***materially*** false, not just if it is technically false." *Turner*, 198

---

[11] "The complaint alleged that statements contained in the article referred to the appellant as a crook and a criminal. These statements were based in part upon facts disclosed in the article, but the fact that criminal charges had been filed against the appellant was either known or readily available to the reader as a member of the public. Furthermore, the statements were made in a letter to the editor published in a section of the newspaper titled "The Forum, Opinion," and the letter was directed not toward the appellant, but toward the judicial system." *Id*.

F.Supp.3d at 1365 (internal quote omitted). Contrary to Plaintiffs' (incorrect) conclusions of law, select "bubble notes" and colored boxes cannot constitute a claim for defamation, as they do not change the substance of the Report. *Id*. Similarly, Plaintiffs' allegations regarding variations of certain terms like "fine" and "settlement agreement" or "scam" and "concerns about possible inadvertent failures to comply with technical rules governing charitable organizations" to suggest or imply falsity or omission are immaterial and do not give rise to an actionable claim. *Id* (citing, *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516 (1991) ("explaining that a flawed assertion of fact is not actionable so long as it is 'substantially true,'" defamation law overlooks minor inaccuracies). "The alleged false statement does not have to 'perfectly accurate' if the 'gist' or the 'sting' of the statement is true." *Id*. As is the case here, the alleged statements cannot be considered false because there would be no different effect on the "common mind" of the reader from which the truth would have produced. *Id*. Accordingly, and as demonstrated by the actual "statements" and judicially noticed documents, Plaintiffs cannot allege or sustain a claim of "falsity" and accordingly, their claim fails as matter of law.

### IV.  Plaintiffs Seek to Use This Litigation for Improper Purposes Primarily Because of Mrs. Butkus Exercising of Her First Amendment Rights

In Florida, the defendant's burden to show "primarily because" is exceedingly light, and is satisfied if a preponderance of the evidence shows that a primary objective behind the claims seeks to intimidate, prevent, silence, harass, embarrass, abuse or retaliate against opponents/critics, or is otherwise brought for some other improper, contemptuous, or bad faith reason, including but not limited to forcing an opponent to suffer public embarrassment, emotional strain, and litigation expenses. *Florida Fern Growers Ass'n, Inc. v. Concerned Citizens of Putnam Cnty.,* 616 So.2d 562, 570 (Fla. 5th DCA 1993); *see also, Satkar Hospitality, Inc. v. Fox Television Holdings,* 767 F.3d 701 (7th Cir. 2014) (opining that SLAPP suits are deployed to deter the exercise of legal rights by burdening critics with expensive litigation; further stating that the point of a SLAPP suit is not necessarily to win it, but rather to impose litigation costs). Upon a review of the allegations and the actual statements and public commentary, there is more than sufficient grounds to determine that a primary purpose of this

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

litigation is to silence and prevent Ms. Butkus' from exercising her right of free speech in commenting unfavorably on Plaintiffs.[12] *See generally*, [DE 6, 6-1] and **Exhibits 1-3**.

Outside of conclusory allegations strewn throughout the Complaint [DE 6] of "severe and irreparable injury" damages "vastly in excess of $75,000" (despite no factual allegations to plausibly support this amount)[13] and other blanket assertions sounding in un-paralleled harm, the pleading is noticeably silent and devoid of any facts that would suggest that the Inspector Bark Radio Show or a Facebook community page could plausibly have caused harm by discussing matters already found in the public record.  For example, the Cease and Desist Letter [DE 6-1] looks to intimidate and threatens Mrs. Butkus with the cost of litigation, *injunctive relief*, and a damages award "exceeding many hundreds of thousands, if not millions of dollars against you personally." [DE 6-1 at 5]. The letter accuses Mrs. Butkus of committing a felony and threatens her with felony criminal liability. *Id*. at 13. Forget for a moment that the letter's account of the law is mostly wrong, Plaintiffs' attorney of record actually goes so far as to threaten bringing criminal charges through the State Attorney in order to obtain an advantage in this (purportedly) civil matter. *Id* at 15. In addition to violating Rule 4-3.4(g) of the Florida Bar Rules of Professional Responsibility, these overt threats cannot be meritoriously argued as anything other than an attempt to silence Mrs. Butkus and cause emotional and financial hardship.

It follows that if the primary purpose of this action was solely to seek the recovery for legitimate losses caused by actual defamatory statements, why would Plaintiffs use seven (7) and a half (1/2) pages of their pleading to emphasize their own achievements and proceed to assert private medical information that is wholly unrelated to any possible issue or circumstance in this case if not to embarrass, harass, cause emotional harm, and retaliate against someone that joined the public discourse of violations of law the DCS deemed committed? *See*, [DE 6 at ¶¶10-15; 16-19]. How can this action be in good-faith when it is premised on trying to use the litigation as a shield to wildly defame the opposing party? The answers are simply – it cannot.

Additionally, if the alleged statements are purportedly defamatory and false, how can Mrs. Butkus' internet radio program or the GBU page be the actual or proximate cause of the

---

[12] Based on insidious tone of the allegations, Plaintiffs' pursuit of injunctive relief, unsubstantiated (and arguably implausible) amount in controversy, and the inclusion of scandalous and irrelevant personal attacks, there is also more than sufficient "evidence" to determine this litigation was not brought to seek redress for defamation.

[13] *See*, *McKenzie*, 2017 U.S. Dist. LEXIS at *52-53 (after examining the pleadings and making "reasonable deductions" Judge Seltzer opined that given the sparsity of the complaint's factual allegations the Court "need not suspend reality or shelve common sense" to determine that the plaintiff was incapable of satisfying the $75,000 jurisdictional threshold).

purported damages when multiple news organizations issued similar opinions to over 300,000 viewers, *supra*? It follows naturally and logically that if the redress of harm is defamation, Plaintiffs would seek to recover from the sources of harm caused to their reputation. This in turn begs the question, if these stories contain the same purportedly false statements, why haven't Plaintiffs sought to recover for the harm these organizations caused? It would appear that a non-institutional party like Mrs. Butkus would be more susceptible to intimidation tactics and litigation expenses then a national news organization.

For the reasons set forth above, and consistent with the either non-existent or exceedingly light threshold showing Defendant is to make under the Anti-SLAPP law to show "primarily because", the initial burden has been met.

**V.     The Anti-SLAPP Stay of Discovery Should Apply Pending Adjudication on this Anti-SLAPP Motion to Dismiss**

Federal courts routinely enforce a stay of discovery pending consideration of an Anti-SLAPP motion. *Aeroplate Corp. v. Arch Ins. Co.*, 2006 WL 3257487 (E.D. Cal. Nov. 9, 2006) (stay under anti-SLAPP statute appropriate when "(1) the factual basis of the case has been developed through discovery or similar prior proceedings to the extent a motion for summary judgment would be appropriate"; (2) "the parties agree"; or (3) "the only issue presented by the motion is an issue of law" under Rule 12(b)(6)); *Smith v. Payne*, 2012 WL 6712041 (N.D. Cal. Dec. 26, 2012) (applying discovery stay where defendants' anti-SLAPP motion "challenges the legal sufficiency of Plaintiffs' claims... in the nature of a Rule 12(b)(6) motion to dismiss").

The stay under anti-SLAPP statutes can be lifted upon a showing of good cause where plaintiff needs targeted discovery to respond to the motion. *See,* D.C. Code § 16-5502(c)(2); RCW § 4.24.525(5)(c); CCCP § 425.16(g); NRS § 41.660(e). But even then, courts will not permit discovery where, as here, no amount of discovery could suffice to establish a viable claim. *Adelson*, 973 F. Supp. 2d at 503 n.26 (denying Rule 56(d) motion for discovery to oppose Nevada anti-SLAPP motion because "Plaintiff has not alleged knowledge of falsity, facts supporting such a finding, or a reasonable, non-conclusory basis for believing that discovery will create a genuine issue of material fact"); *Haack*, 2012 WL 3638767 (granting Nevada anti-SLAPP motion without discovery); *Beckham*, 2011 WL 977570 (denying discovery and granting dismissal under California's anti-SLAPP law).

**VI.     The Complaint [DE 6] Is an Improper "Shotgun Pleading"**

In additional to being a SLAPP suit, the Complaint [DE 6] is a quintessential "shotgun pleading" – and thus, needs to be dismissed accordingly. A cursory review of each cause of action shows that the Complaint [DE 6] incorporates allegations from preceding paragraphs into each subsequent count and is otherwise comprised of artful, yet abundantly deficient conclusory and non-supportive allegations.[14] *Hollis v. Western Acad. Charter, Inc.*, 2016 U.S. Dist. LEXIS 164345, *11-12 (S.D. Fla. Nov. 28, 2016) (BLOOM) (citing, *Oshar v. Postal Serv.*, 297 F.App'x 863, 864 (11th Cir. 2008). The implications of which makes it "virtually impossible to know which allegations of fact are intended to support which claims for relief." *Anderson v. District Bd. Of Trustees of Central Florida Community College*, 77 F.3d 354, 366 (11th Cir. 1996). Moreover, it does not comply with the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure, or with Rule 10(b). *Greif v. Jupiter Med. Ctr., Inc.*, 2008 U.S. Dist. LEXIS 108793, *8-10 (S.D. Fla. 2008) (Marra) (dismissing employment decimation and defamation action as an improper shotgun pleading) (citation omitted).

Due to the defective pleading, Count I is the only separately alleged cause of action. *See,* [DE 6]. As Count II includes all but a single allegation from Count I (¶60) it alleges both defamation and defamation by implication, simultaneously. *See*, [DE 6 at p. 21, 23]. In turn, Count III brings a joint defamation claim by both Plaintiffs, half of which is duplicative of Plaintiff Rescue s' claim in Count I. *Id*. at p. 23. Moreover, by virtue of including ¶¶61-2, Plaintiff Rescue is also asserting some kind of hybrid defamation/defamation by implication claim in Count III. *Id*. at 23-4. Not only is this inherently duplicitous of Counts I and II, the combination of allegations is such that Mrs. Butkus is unable to determine the nature or identity of the allegations being raised, how they differ from Counts I and/or II, if at all, which alleged statement(s) caused what particular harm(s) and to what extent. Of course, by the time a reader reaches Count IV, the only obvious certainty is that it is a duplicitous and undecipherable amalgamation. [DE 6 at ¶¶72-5] (incorporating ¶¶1-59, 61-2, and 65-70).[15] Thus, the Court should further dismiss the Complaint [DE 6] for non-compliance with Federal Rule 8.

---

[14] It appears that a select few of prior allegations from previous counts are not carried over into the following cause of action. Count II includes all previous paragraphs (1-59) with the exception of Paragraph 60. [DE 6 at p. 23]. Count III includes ¶¶1-59 and 61-2, and thus every allegation through the final paragraph in Count I and the first two (2) allegations in Count II. As such, Count III appears to be a conjoined hybrid of both traditional and

[15] Plaintiff's negligence claim in Count V is inherently duplicitous and redundant even when excluding the shotgun pleading factors. [DE 6 at ¶¶76-79].

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

**VII.    Count V (Negligence) Is Recast Claim of Defamation That Does Not Exist Under Florida Law**

Notwithstanding the improprieties of Count V by virtue of shotgun pleading tactics, *supra*, Plaintiffs' claim for negligence fails, and in fact, does not exist as a matter of law. [DE 6 at ¶¶76-79]. This cause of action is nothing more than a blind recitation of the "magic words" (1) Mrs. Butkus "owed a duty to Amy Roman to refrain from performing any acts that would negligently, recklessly, wantonly, or willfully injure Plaintiff Amy Roman"; (2) Mrs. Butkus breached that duty; (3) Ms. Roman was directly and proximately injured by Defendant by virtue of the breached duty; and (4) damages." *Id*. In regard to damages, Plaintiff Roman claims severe and irreparable damage to her reputation, emotional distress, and irreparable damage to her reputation. *Id*. at ¶79.

Putting aside the sheer absence of any factual allegations that could plausibly give rise to a negligence in this case, the alleged damages demonstrate that Count V is a recast claim for defamation. Indeed, it is based upon the same general allegations as Counts I-IV, without distinction. [DE 6 at ¶¶76-79]. To the extent Plaintiffs are essentially alleging that Mrs. Butkus owed Plaintiff Roman a duty not to defame her – Florida law does not recognize it.

In *Morrison v. Morgan Stanely Props.*, 2008 U.S. Dist. LEXIS 30953 (S.D. Fla. April 15, 2008), this District dismissed a negligence claim alleging the existence of a duty to rectify her termination. In doing so, the Court opined that the failure to allege physical injury was an immediate bar to the claim. *Id*. at *28-29. Conclusory allegations of "duty" and breach of that duty were insufficient. *Id*. Akin to the case *sub judice*, the Complaint fails to allege how Mrs. Butkus is directly or indirectly liable for the alleged wrongful conduct. *See generally*, [DE 6]. There are also no allegations that are sufficient to show a legal duty. *Id.* Nevertheless, Count V fails as a matter of law because it is merely recasting the defamation claims. *Pierson v. Orlando Reg'l Healthcare Sys.*, 2010 U.S. Dist. LEXIS 33974 (M.D. Fla. April 6, 2010) "Attempts by plaintiffs in other cases to pursue claims sounding in defamation by calling them by the name of another tort have been repeatedly rejected by courts in this state. *Id*. at *75. (citation omitted). Consequently, Count V must be dismissed as well. *Id*.

WHEREFORE, Defendant, MRS. DARCY ODE BUTKUS A/K/A DARCY BUTKUS AKA "INSPECTOR BARK", respectfully moves this Honorable Court for an Order dismissing the Complaint [DE 6] as a SLAPP lawsuit in violation of §768.295, Florida Statutes and grant entitle to recover her reasonable attorneys' fees and costs as required by same. Alternatively, the

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

Complaint [DE 6] must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6), and requests such further relief in Defendant's favor that the Court deems appropriate and just.

DATED: December 5, 2017

Respectfully Submitted,

COLE, SCOTT & KISSANE, P.A.
Counsel for Darcy Butkus
222 Lakeview Avenue, Suite 120
West Palm Beach, Florida 33401
rachel.beige@csklegal.com
todd.dobry@csklegal.com
Telephone: (561) 383-9200
Facsimile: (561) 683-8977

By:    /s/ Todd R. Dobry
       RACHEL K. BEIGE
       FBN: 0016366
       TODD R. DOBRY
       FBN: 109081

## CERTIFICATE OF SERVICE

We hereby certify that on this December 5, 2017, we electronically filed the foregoing with the Clerk of Court using the CM/ECF. We also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel of parties who are not authorized to receive electronically Notices of Electronic Filing.

COLE, SCOTT & KISSANE, P.A.
Counsel for Defendant
222 Lakeview Avenue, Suite 120
West Palm Beach, Florida 33401
rachel.beige@csklegal.com
todd.dobry@csklegal.com
Telephone: (561) 383-9200
Facsimile: (561) 683-8977

By:    /s/ Todd R. Dobry
       RACHEL K. BEIGE
       FBN: 0016366
       TODD R. DOBRY
       FBN: 109081

Case No. 0:17-cv-61893

**SERVICE LIST**
Kaiser Romanello, P.A.
11555 Heron Bay Blvd Ste 200
Parkland, FL 33076-3362
***VIA CM/ECF***

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX